## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 18 2019, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark J. Roberts
Maggie L. Smith
Jeffrey S. Dible
Jenai M. Brackett
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Clifford R. Whitehead
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LaDonna Snyder, as Personal Representative of the Estate of Alan Lance Wright,

*Appellant-Defendant,*

v.

Alisa K. Wright and BioConvergence LLC,

*Appellees-Plaintiffs.*

December 18, 2019

Court of Appeals Case No. 18A-PL-2702

Appeal from the Boone County Circuit Court

The Honorable J. Jeffrey Edens, Judge

Trial Court Cause No. 06C01-1703-PL-239

**Altice, Judge.**

# Case Summary

[1] Alisa K. Wright's (Alisa) marriage to Alan Lance Wright (Lance), now deceased, was dissolved in January 2017 in the Boone Superior Court. As part of the dissolution, matters were alleged and presented concerning Lance's conduct while employed with BioConvergence LLC (BioC) – a company that Alisa formed in 2004 – and whether such conduct constituted dissipation of assets for purposes of division of the marital estate. In September 2016, shortly before the dissolution final hearing, Alisa filed in another court a complaint, later amended to add BioC as a plaintiff, asserting eight claims against Lance stemming from his employment with BioC and his position on the board of directors, including breach of fiduciary duty, breach of contract, tortious interference with business relationships, and misappropriation of trade secrets. About a year after the dissolution was final, Lance filed a motion for summary judgment asserting that the claims had been fully adjudicated by the dissolution court and were barred by res judicata. The trial court denied his motion, and the personal representative of Lance's estate,[1] LaDonna Snyder (Snyder), now appeals asserting that summary judgment should have been granted because the dissolution court already resolved the matters involving Lance's conduct related to BioC.

[2] We affirm.

---

[1] Lance passed away in January 2019.

# Facts & Procedural History

[3] Alisa and Lance married in 1987, after graduating from college, where Alisa studied pharmacy and Lance studied engineering. There were no children born of the marriage. Alisa and Lance each had careers at different businesses, then, in 2004, Alisa formed and began working at BioC, a service provider to the life sciences industry that provides contract services, including development, production, testing, supply chain, and consulting services, to the pharmaceutical industry. BioC is headquartered in Bloomington, Indiana, and, as reflected in its 2005 Articles of Incorporation, its initial members were Alisa, Lance, and two other individuals. Lance began working part-time for BioC in 2004 and began serving on the Board of Directors and Board of Advisors in 2005. In 2006, he left employment with another company and joined BioC full-time, where he remained until he was terminated in August 2012. Lance was, at first, Chief Engineering Officer at BioC, and, in 2008, he became Chief Operating Officer. Alisa at all times has been the majority member and Chief Executive Officer of BioC. At the time of their dissolution, Alisa owned approximately 75% and Lance owned approximately 5% of BioC's total units.

[4] In August 2012, Lance filed a petition for dissolution in the Boone Superior Court. In the dissolution proceedings, Alisa claimed that Lance had dissipated marital assets, including BioC, by engaging in misconduct that harmed both Alisa and BioC. During the dissolution proceeding, in August 2014, BioC's four-person Board of Directors consented to allowing the Board's Chairperson, Kathy Jackson, to intervene in the dissolution on behalf of BioC to protect the

confidentiality of certain requested documents. In September 2016, the dissolution court held a six-day final hearing. Alisa testified and presented evidence in support of her position that Lance had dissipated assets of BioC by committing "deceit, willful misconduct, negligence, and fraud," in "violation of the operating agreement and his duties as an officer and member" and engaged in the "concealment of key . . . information that is needed to make good business decisions and that he knew were needed to make good business decisions." *Appellant's Appendix Vol. III* at 5. More specifically, Alisa testified that Lance concealed meetings he had with other BioC employees regarding Alisa and BioC; concealed communications relating to the valuation of BioC and securities fraud claims; engaged in an extramarital affair with a BioC employee; assisted in and provided information to another BioC employee for suit against Alisa and BioC; made false and defamatory statements about Alisa; took emails containing BioC information when leaving employment at BioC; and disclosed confidential information to third-parties.

[5]    In January 2017, the dissolution court issued findings and conclusions in which it determined that a 50/50 split of the marital estate was appropriate. Its findings and conclusions included:

> 8. Between 2005 and November of 2008, Lance and Alisa paid into BioC a total of approximately $3,260,000.00 of combined capital contribution in exchange for units in November 2005 and November 2008. Units were allocated as to give Alisa approximately 75% and Lance approximately 5% of the total units of BioC.

13. Alisa advances two theories about Lance and his work at BioC. One, he was incompetent.[2] Two, he was deceitful.[3] For

---

[2] In its findings, the dissolution court footnoted as follows:

> A spouse's dereliction of business duties when a business entity is an asset of the marriage constitutes dissipation. <u>Stutz v. Stutz</u>, 556 N.E.2d 1346, 1349 (Ind. Ct. App. 1990).

> As the principle is suggested to apply here, Lance supposedly dropped the ball on the filing of a timely warranty claim for architectural windows installed by his friend Greg Menefee's company for [a] custom building. Sixteen windows in the BioC building had to be replaced. Lance probably could have handled that project better, but there is no showing that that shortcoming materially impacted the company's value or profitability. Then there is the fact that Lance's job functions after he left BioC were taken over by other employees — he was not replaced. The Court heard testimony from those taking on his responsibilities tantamount to that there were messes that had to be cleaned up after Lance left. Employees who have followed Lance may truly think that. But it rings hollow to the Court. Lance worked for BioC for more than six years. If he was incompetent enough to have harmed BioC's business, he'd have been fired long before. Lance's work was adequate. It was satisfactory enough at least to not harm BioC's business or the wealth of the parties.

*Appellant's Appendix Vol. II* at 57.

[3] Here, the dissolution court footnoted:

> When considering dissipation and whether a party wasted or misused marital assets, Indiana law requires this Court to consider whether the allegedly dissipating party had the intent to hide, deplete, or divert a marital asset; whether supposedly wasteful expenditures, acts or omissions benefitted the mar[ital] enterprise or occurred for a purpose entirely unrelated to the marriage; whether the waste was remote in time and effect or occurred just before the filing of a divorce petition; and whether the diminishment was excessive or <u>de minimis</u>." <u>Estudillo v. Estudillo</u>, 956 N.E.2d 1084, 1094 (Ind. Ct. App. 2011).

> There was some suboptimal behavior at BioC from late 2011-2012. By late 2011, the Wright[s'] marriage was unraveling. Lance was considering leaving the home and in April 2012 indicated that he would disengage from BioC. Yet these two had to continue to work together. It could not have been a pleasant time and Lance is credible in his claims that Alisa was not doing her best managerial work. But if Lance, not the boss but the COO reporting to Alisa, ever had license to critique her job performance as CEO it was decidedly not soon after a certain admitted "error in judgment" on his part. Lance wasn't his best self either.

> No paramour ever financially benefited to the detriment of the marital estate or BioC. Lance did not dissipate. The only other point in bringing it up is to explain why the Court does not find credible Lance's version that Alisa was wrecking the company. Alisa did the best she could and she

either or both of these reasons, generally a theory of dissipation, Lance ought to receive a share of the marital estate of less than fifty percent, so she theorizes. While he does not call for an unequal distribution, Lance, for his part, suggests that Alisa was managing the company poorly and that he and his acolytes working there saved it.

14. But, at least insofar as harming BioC and diminishing the marital estate, the Court finds that any mistakes Lance made during his six plus years working at BioC did not do that. Any of Lance's dishonesty or surreptitious office politicking, while personally hurtful to Alisa, did not financially harm her or BioC.

15. Alisa and a human resources employee met with Lance on August 9, 2012 to inform him that his last day at BioC was to be August 31, 2012. In that meeting, Lance was told not to return to BioC until the following Monday. Lance disobeyed that instruction and, along with two other employees, visited BioC on Saturday August 11, 2012. Further, Lance returned alone to BioC on Sunday, August 12, 2012. Lance admits he retrieved some emails and financial records of BioC but says that he was entitled to do that and that many items retrieved were personal in nature. It is suspicious that he would come into the office on the weekend when specifically told not to and then collect material. But again the Court has not been shown how this disobedience harmed the value of BioC. As for his right as a minority owner to review financial records, Lance certainly had the right to look at financial records of a business in which he was a minority

---

was being productive. She may have been focused on the external aspects of BioC's business, finding new clients and diversifying business, but that is [a] big part of what a CEO does. Any notion that Alisa's job performance as CEO harmed BioC is just not supported by the facts. BioC is today a profitable going concern mainly because of Alisa's vision in starting the company and because of her leadership.

*Id.* at 57-58.

owner.  But taking them out was not the proper way to go about exercising that right.

* * *

18. When Lance left, the value of the business, as will be discussed in more detail below, was about $1.5 million.  BioC is Alisa's creation.  Of the $3.2 million that Alisa and Lance invested during its start-up phase, most of which was money Alisa brought into the marriage, more than half of that was gone in 2012.  In evaluating whether something other than a 50/50 division of wealth is appropriate, as of 2012 the parties' relative contribution to the marital estate is an equitable wash.  Put another way, from 1987-2005, Alisa has made most of the money the Wrights earned.  From 2005-2012, she lost most of what they lost.

* * *

24. Alisa's interest of 58,381.624 units 74.88% of BioC is worth $1,403,706.00.  Lance's 4,223.81 units 5.42% is worth $101,604.00.  The total value to the marital estate of the Wrights' interest in BioC of 62,605.433 units 80.3% of the controlling units of BioC is $1,505,310.00.  Each unit Lance and Alisa own is worth $24.05.

*Appellant's Appendix Vol. II* at 56-60.

During the hearing, the dissolution court heard evidence about a transfer of $100,000 in 2011 and 2012 from Lance and Alisa to their friends Greg and Julie Menefee, who also owned units of BioC.  The Menefees asked the Wrights for the $100,000 because Greg needed to increase his liquid assets on his personal

balance sheet in order for him to be able to be bonded in the construction industry. Ultimately, the Wrights wrote eight checks to the Menefees for the funds, and there was conflicting testimony presented at the dissolution final hearing as to whether the $100,000 was a loan or a gift, with Lance maintaining that the two couples had helped each other out in the past and he intended to give the money to the Menefees, and Alisa testifying that the $100,000 was a short term loan that she intended would be repaid. The dissolution court found that the eight checks were "a business accommodation," not gifts, and it further stated:

> 55. *What Alisa has is a personal asset; a chose in action which is a claim to a right to recover money from the Menefees.* Maybe it is a loan. Maybe it is equitable claim for unjust enrichment. *Whatever kind of expected (hoped for) repayment chose of action it is, it is not part of the marital estate and it is not capable of division. McNevin v. McNevin, 447 N.E.2d 611, 615 (Ind. Ct. App. 1983). Neffle v. Neffle, 483 N.E.2d 767, 771 (Ind. Ct. App. 1985), trans. denied.* "The contingent and speculative nature and value of a chose in action is what makes it incapable of division and hence excluded from marital property." Id. at 771-72.

> 56. Whatever Alisa is able to recover in her lawsuit against the Menefees, if indeed she is able recover anything, she is entitled to keep. This Court has nothing to say about its value and who it ought to be set off to, because it is not marital property. It is too speculative.

> 57. . . . [I]f Lance took a position identical to Alisa's – that there was always the understanding that the Menefees would pay back the money within a short period of time – *the claim against the*

*Menefees would still be only a chose in action and not marital asset subject to division. . . .*

*Id.* at 65-66 (emphases added).

[7] Alisa appealed the dissolution court's decision, raising various challenges, and this court issued a memorandum decision on September 28, 2017, affirming the trial court's equal division of marital property. *Wright v. Wright*, No. 06A01-1701-DR-52 (Ind. Ct. App. Sept. 28, 2017), *trans. denied*. In addressing Alisa's claim that the court's division was erroneous because of Lance's alleged dissipation stemming from his conduct at BioC, the *Wright* court stated:

> Wife asserts that Husband's "obvious and heinous breaches of his fiduciary obligations resulted in dissipation of the marital estate, and specifically [Wife]'s share of it." Appellant's Br. at 20. In support of that contention, Wife first maintains that there was "sufficient evidence" of Husband's dissipation, such as testimony that he "worked with others to increase the expenses and risk to BioC," he "breached certain fiduciary duties," and his "actions introduced uncertainty into BioC's operations." Appellant's Br. at 20. But the trial court expressly found that "any mistakes [Husband] made during his six-plus years working at BioC" did not harm BioC or diminish the value of the marital property. Appellant's App. Vol. 2 at 56. We will not reweigh that evidence on appeal.

*Wright*, slip op. at *9.

[8] Meanwhile, on September 2, 2016, which was shortly before the dissolution trial began, Alisa filed in the Monroe Circuit Court a complaint against Lance, which Alisa amended in August 2017 to add BioC as a party plaintiff and

additional claims.[4]  As is relevant here, the Amended Complaint alleged the following facts common to all counts:

> 14.  While acting as a member, director, and/or officer of BioC, Mr. Wright engaged in the following deliberate and repeated willful mismanagement and misconduct, and he individually and deliberately directed and persuaded others to do the same by his use of deceit to conceal and deny the truth of the relevant matters:
>
> a. He knowingly, intentionally, and deliberately concealed from BioC and from Ms. Wright, and by deceit he persuaded others to conceal from BioC and from Ms. Wright, factual information that he was obligated to disclose to BioC and to Ms. Wright.
>
> b. Over the course of several years while married to Alisa, he knowingly, intentionally, and deliberately engaged in a lengthy extramarital affair with another BioC employee, and while engaged in this affair he improperly advanced her career, her financial goals, and her personal goals within BioC, he improperly gave her access to confidential BioC information, and he caused BioC to enter into a loan agreement with her on improperly favorable terms.
>
> c. When confronted about his extramarital affair, he falsely denied the existence of the affair and continued to knowingly, intentionally, and deliberately conceal and distract from the affair by defaming Ms. Wright.

---

[4] In February 2017, the Monroe Circuit Court court granted Lance's petition to transfer venue, and the case was transferred to the Boone Circuit Court.

d. He knowingly, intentionally, and deliberately collaborated with, provided confidential information and documents to, and assistance to, BioC's former chief financial officer, Kathryn Eddy ("Ms. Eddy") for use by Ms. Eddy in her lawsuit against BioC and Ms. Wright, and he actively colluded with Ms. Eddy, her agents, and other third-parties, in advancing meritless claims asserted by Ms. Eddy against BioC and Ms. Wright.

e. He knowingly, intentionally, and deliberately made false and defamatory statements to third-parties, including BioC employees and members, accusing Ms. Wright of having significantly failing physical and mental health, in order to undermine her leadership of BioC and to trigger a provision in BioC's operating agreement that could give him control of the company if Ms. Wright were incapacitated.

f. He knowingly, intentionally, and deliberately concealed from BioC and from Ms. Wright that he, Ms. Eddy, and other BioC employees were conducting secret on-site and off-site meetings in hopes of building support for a plan to reorganize BioC and strip Ms. Wright of her BioC ownership, and her authority to lead BioC, in favor of Mr. Wright.

g. He knowingly, intentionally, and deliberately concealed from Ms. Wright and from BioC secret communications among himself, Ms. Eddy, and BioC's accounting firm that were material to the valuation of BioC and to alleged securities fraud claims.

h. He knowingly, intentionally, and deliberately improperly forwarded and removed from BioC's computer system numerous e-mail messages containing confidential and proprietary information, as well as trade secrets.

i. He knowingly, intentionally, and deliberately improperly removed property from BioC upon his departure from the company.

*Appellant's Appendix Vol. III* at 77-79. Alisa and BioC asserted eight claims against Lance: Count I, Breaches of Fiduciary Duty; Count II, Breach of Contract; Count III, Tortious Interference with Business Relationship; Count IV, Misappropriation of Trade Secrets; Count V, Computer Tampering; Count VI, Conversion; Count VII, Criminal Mischief; and Count VIII, Defamation.

[9] On January 15, 2018, Lance filed a Motion for Summary Judgment on the Amended Complaint. His motion asserted that res judicata – both claim preclusion and issue preclusion – barred Alisa's and BioC's claims, arguing that "the claims and issues in . . . the Amended Complaint all arise from the same acts of Lance's alleged misconduct [that were] litigated in the Dissolution Proceeding." *Id.* at 7. Lance argued that the dissolution court heard considerable testimony and evidence on Alisa's dissipation claim related to Lance's conduct and determined that BioC was not harmed, and thus their "attempt to relitigate the same issues and claims that were already adjudicated" was precluded by res judicata. *Id*. at 2. Lance urged that Alisa's own appeal from the dissolution court's decision illustrated his point – that the same claims she makes in her Amended Complaint had already been decided against her – because she argued in her appellant's brief that Lance's "obvious and heinous breaches of his fiduciary obligations resulted in dissipation of the marital estate, and specifically Alisa's share of it" and that it was "unjust for Lance to

improperly benefit from activities that undermined Alisa and BioC[.]" *Id.* at 6. Lance acknowledged that BioC was not a party in the dissolution proceeding, but maintained that BioC "is in privity with Alisa and its interests were involved and litigated in the Dissolution Proceeding" such that "BioC is also bound by such judgment." *Id.* at 3.

[10] Alisa and BioC filed their Plaintiffs' Response in Opposition to Lance's Motion, arguing, *inter alia*, that (1) the claims against Lance asserted in the Amended Complaint were choses in action, and the dissolution court made its intention clear that the parties' choses in action were not part of the marital estate and that its dissolution decree should not bind non-parties; (2) res judicata was not applicable, as neither the claims nor the issues were expressly adjudicated in the prior dissolution proceeding, highlighting that the dissolution court did not determine any of the necessary elements of the causes of action, and, while it found that Lance did not dissipate marital assets, it did not determine whether Lance was liable for the claims as asserted in the Amended Complaint; and (3) as to Lance's claim that Alisa was in privity with BioC, "Alisa was never in privity with BioC, as her interests were solely for her personal benefit (i.e., acquire a larger share of the marital estate) and were never aligned with BioC's interest in the pending claims (i.e., obtain a monetary judgment), which could never have been achieved in the dissolution proceeding." *Id.* at 177. Alisa and BioC also urged that material facts were in dispute and precluded summary judgment for Lance.

Following a July 2018 hearing, the trial court issued an order on September 4, 2018, denying Lance's motion. It stated, in part:

> Generally, Lance argues that res judicata, under both issue preclusion and claim preclusion, bars Alisa from bringing this matter. Further, Lance argues BioC is barred from bringing this claim because it is a privy to Alisa.
>
> At issue is whether or not [the dissolution court]'s finding, that Lance did not dissipate the value of BioC, is sufficient to determine this separate action as a matter of law based on similar facts but under a different context.
>
> The Court finds that, *although the issues were similar; the specific issues in play in this matter, as to both plaintiffs, could not have been fully determined by the dissolution Court*.
>
> Accordingly, the Court finds that res judicata does not bar Alisa from bringing this matter.
>
> Further, even if BioC was privy to Alisa, for reasons stated above res judicata does not bar it from bringing this matter.

*Appellant's Appendix Vol. II* at 23 (emphasis added). The trial court certified its order for interlocutory appeal, and we accepted jurisdiction.

# Discussion & Decision

Snyder contends that the trial court should have granted Lance's motion for summary judgment. When reviewing the entry or denial of summary judgment, our standard of review is the same as that of the trial court: summary judgment

is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hilliard v. Jacobs*, 957 N.E.2d 1043, 1046 (Ind. Ct. App. 2011) (citing Ind. Trial Rule 56(C)), *trans. denied*, *cert. denied* 568 U.S. 998 (2012). The reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. *Einhorn v. Johnson*, 996 N.E.2d 823, 828 (Ind. Ct. App. 2013), *trans. denied*.

[13] Snyder argues that Alisa and BioC are trying to re-assert "the same matters in new litigation in front of a different judge" by "assigning new names and labels to [the] claims" and that res judicata prevents them from doing so because the matter was fully adjudicated in the dissolution action. *Appellant's Brief* at 5. "Res judicata, whether in the form of claim preclusion or issue preclusion (also called collateral estoppel), aims to prevent repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies." *Webb v. Yeager*, 52 N.E.3d 30, 40 (Ind. Ct. App. 2016), *trans. denied*.

### a. Claim Preclusion

[14] Snyder argues that Alisa and BioC's "overarching allegation" in the Amended Complaint is that Lance, while acting as member, director, and/or officer of BioC, engaged in "deliberate and repeated willful mismanagement and misconduct, and he individually and deliberately directed and persuaded others to do the same by his use and deceit to conceal and deny the truth" and that the dissolution court already "rejected every single one of Alisa's claims of

misconduct related to BioC" when it concluded "that Lance did not engage in dissipation of any BioC assets[.]" *Appellant's Brief* at 12, 25, 30. Snyder urges that Plaintiffs cannot "relitigate what amounts to substantially the same claims that were litigated in the Dissolution Proceeding[.]" *Id*. at 25.

[15] Claim preclusion bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. *Thrasher, Buschmann, & Voelkel, P.C. v. Adpoint, Inc.*, 24 N.E.3d 487, 494 (Ind. Ct. App. 2015); *MicroVote Gen. Corp. v. Ind. Election Com'n*, 924 N.E.2d 184, 191 (Ind. Ct. App. 2010). Four requirements must be met for a claim to be prohibited under the doctrine of claim preclusion: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. *MicroVote*, 924 N.E.2d at 191. Snyder maintains that all four of the claim preclusion requirements have been met. We disagree.

[16] Even if there was considerable testimony and evidence presented to the dissolution court in support of Alisa's contentions that Lance committed misconduct in various ways, we cannot say that the dissolution court addressed the material elements of the Amended Complaint's legal claims or rendered judgment on the merits on each of them. For instance, it did not expressly determine if Lance breached a fiduciary duty, if an employment or

confidentiality contract existed or if he breached it, whether he breached the operating agreement, whether BioC had certain business relationships with other companies or individuals and whether Lance interfered with those, whether he defamed Alisa, or whether he committed criminal mischief or computer tampering. Although Alisa raised similar allegations and presented evidence concerning aspects of Lance's conduct at BioC – in the course of asserting that Lance dissipated assets – this fact does not preclude her or BioC from filing a lawsuit to recover a money judgment. An overlap in some evidence does not equate to a full adjudication on the merits. Furthermore, in their Amended Complaint, Alisa and BioC seek compensatory damages, punitive damages, and treble damages; none of these remedies were available to either of them in the dissolution proceeding.

[17] As to the requirements of jurisdiction and privity, the record reflects that the dissolution court expressly stated in its order that it was not determining or affecting any non-party's rights, other than as to discovery. In that same vein, in a dissolution discovery order, the court stated:

> When persons to whom one is not married, however, are believed to have committed legal wrongs, the court where one seeks to hold those others "accountable" is *not* a divorce court. *This* court in *this* case 'has neither the authority nor responsibility to hold persons outside of this marriage "accountable" to either Ms. or Mr. Wright.

> Persons besides Mr. and Mrs. Wright, though not parties to this case, may be potential witnesses. This court's jurisdiction to hold anyone "accountable," other than Mr. and Mrs. Wright, is

limited to the authority to compel non-parties to disclose information relevant to this divorce; to produce evidence they possess and to testify as to what they have seen or heard.

*Appellant's Appendix Vol. III* at 244 (emphases in original).

Here, we reject Snyder's suggestion that Alisa was in privity with BioC and represented BioC's interests. The term privity describes the relationship between persons who are parties to an action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action. *MicroVote*, 924 N.E.2d at 196. "The term includes those who control an action, though not a party to it, and those whose interests are represented by a party to the action." *Id.* While Snyder maintains that Alisa controlled BioC and thus represented its interests, Alisa and BioC dispute that assertion, arguing that, at a minimum, a question of fact exists on the issue because, at the time of the dissolution proceedings, BioC was controlled by its four-member Board, whose chairperson was Kathy Jackson. Alisa and BioC point out that the Board authorized Jackson to intervene on BioC's behalf for the protection of BioC's confidential information, and there would have been no need for Jackson to intervene if Alisa was already representing or protecting BioC's interests. BioC had no opportunity to litigate or conduct discovery in the dissolution action related to the claims presented in the Amended Complaint, and we conclude that Alisa was not in privity with BioC in the dissolution action.

We find that the four prongs of claim preclusion were not met and, accordingly, the trial court properly denied Lance's motion for summary judgment on this basis.

### b. Issue Preclusion

"The second branch of the principle of res judicata is issue preclusion, also known as collateral estoppel." *Freels v. Koches*, 94 N.E.3d 339, 342 (Ind. Ct. App. 2018). In general, issue preclusion prohibits subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. *Id*. The doctrine applies even if the second adjudication is on a different claim. *Id*. However, issue preclusion does not extend to matters that were not expressly adjudicated and can be inferred only by argument. *Id*.

Where, as here, a defendant seeks to prevent a plaintiff from asserting a claim that the plaintiff has previously litigated and lost, the use has been termed "defensive" collateral estoppel. *Thrasher*, 24 N.E.3d at 494. There are three requirements for the doctrine of collateral estoppel to apply: (1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of the issues; and (3) the party to be estopped was a party or the privity of a party in the prior action. *Id*. Two additional considerations are relevant in deciding whether collateral estoppel is appropriate: whether the party against whom the prior judgment is asserted had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the

use of issue preclusion. *Sims v. Scopelitis*, 797 N.E.2d 348, 351 (Ind. Ct. App. 2003), *trans. denied*.

[22] Snyder argues that issue preclusion applies to bar Alisa and BioC's current claims because "[t]he 'issue' of whether Lance's (alleged) misconduct caused Alisa or BioC harm is identical in both this lawsuit and the dissolution proceeding[,]" and the dissolution court "expressly resolved that very issue against Alisa/BioC." *Appellant's Brief* at 42.

[23] While Snyder suggests that the already-decided issue was whether Alisa or BioC were harmed by Lance's conduct, we find that description frames the issue too broadly. Alisa alleged and sought to prove that Lance dissipated marital assets and to a degree that the presumptive equal division was rebutted. The dissolution court did not determine whether, under the various legal claims now advanced in the Amended Complaint, Lance caused *any* damage or was liable to Alisa and BioC for damages, and if so, in what amount. That is, while the dissolution court determined that Lance's conduct did not constitute dissipation, i.e., the marital estate was not harmed to an extent that the equal division had been rebutted, it did not determine whether Lance was legally liable to Alisa to any degree for his actions. Moreover, as stated, BioC was not a party to the prior action nor did Alisa represent BioC's full interests, and BioC did not have a full and fair opportunity to litigate the claims it now makes. Issue preclusion does not bar either Alisa or BioC from proceeding on their Amended Complaint.

[24] Accordingly, we find that the trial court properly denied Lance's motion for summary judgment.[5]

[25] Judgment affirmed.

Brown, J. and Tavitas, J., concur.

---

[5] Alisa and BioC maintain that Lance's summary judgment motion was properly denied, not only because the requirements of claim preclusion and issue preclusion were not met, but also pursuant to *McNevin v. McNevin*, 447 N.E.2d 611 (Ind. Ct. App. 1983), where a former wife (Nancy) brought a personal injury claim against her former husband (Robert) to recover damages for Robert's alleged assault on Nancy prior to dissolution. The trial court dismissed Nancy's complaint for personal injuries finding that her tort claim was or should have been considered in the property settlement. On appeal, this court reversed, and in so doing found that Nancy's personal injury claim was a chose in action that "fails to qualify as marital property because it was not susceptible to division at the time of dissolution" as "any attempt at valuation would be based on pure speculation[.]" *Id.* at 616, 618. Alisa and BioC urge that *McNevin* is dispositive to the present situation and establishes that Alisa's current claims are choses in action and were not part of the marital estate (and not now barred by res judicata); Snyder argues that *McNevin* is inapplicable and distinguishable because, in that case, the parties submitted a settlement agreement in the dissolution and had not already fully litigated matters, as he claims occurred in the present case. Because we find that summary judgment was properly denied because Snyder failed to satisfy the necessary requirements of res judicata, we do not reach the parties' *McNevin* arguments.